[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15889

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 18, 2012
JOHN LEY
CLERK

D.C. Docket No. 3:08-cv-00501-CLS

CASSANDRA RENEE NICHOLS,

Plaintiff - Appellant,

versus

VOLUNTEERS OF AMERICA, NORTH ALABAMA, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 18, 2012)

Before BARKETT, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Cassandra Renee Nichols appeals the summary judgment in favor of her

former employer, Volunteers of America, North Alabama, Inc., and against her

complaint in which she alleged racial discrimination in employment, 42 U.S.C. §§ 1981, 2000e-2(a)(1); retaliation, 42 U.S.C. § 2000e-3(a); and a hostile work environment, 42 U.S.C. § 2000e-2(a)(1). We affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

Nichols is an African-American woman who began working for Volunteers in 2005 in Florence, Alabama. Volunteers provides services to disadvantaged individuals. When Nichols started with Volunteers, her title was house manager I. As a house manager I, Nichols earned $7.69 an hour. Nichols's immediate supervisor was Sonja King, an African-American woman. Teresa Stephenson, a white woman, served as the program director for the operations of Volunteers in Florence. Stephenson supervised King. Stephenson reported to Victor Tucker, a white man who is the chief executive officer of Volunteers.

Nichols was promoted to house manager II in March 2006. As a house manager II, Nichols gained supervisory responsibilities and received a pay increase to $8.50 an hour. King remained Nichols's direct supervisor, but other employees at Volunteers—including Amy Johnson and Sarah Rickard—also supervised Nichols. Nichols maintains that Stephenson, Johnson, Rickard, and other employees at Volunteers "regularly used the word 'nigger'" and disparaged

black employees at work. Nichols asserts that she reported this racially charged behavior to King and the human resources department at Volunteers.

In September 2006, an accountant at Volunteers began to suspect that Nichols had altered her time sheets to reflect that she had worked more time than she actually had. The accountant reported these suspicions to the human resources department. Tucker placed Nichols on administrative leave when he learned about the alleged alterations. Tucker sent Nichols a letter on October 3, 2006, that explained his decision to place her on administrative leave. In the letter, Tucker also informed Nichols that company policy prohibited her from communicating with the staff of Volunteers while she was on administrative leave.

Volunteers conducted an investigation into whether Nichols had falsified her time sheets to reflect that she worked more time than she actually had. Although the investigation did not establish that Nichols had falsified her time sheets, Volunteers discovered in its investigation that Nichols had violated several company policies, both before and during her administrative leave. Volunteers learned that Nichols had communicated with Volunteers staff members while she was on administrative leave and had used for personal calls a cell phone that Volunteers had issued to her.

Volunteers reinstated Nichols on November 8, 2006. On December 9, 2006,

Tucker demoted Nichols from house manager II to house manager I and reduced her pay. According to Tucker, he demoted Nichols because she had made hand-written time entries on her time sheets, had contacted Volunteers staff while on administrative leave, and had used a company cell phone for personal calls. Nichols asserts that Stephenson made the decision to demote Nichols "regardless of this result of the investigation." Melissa Castle, a white woman, filled the house manager II position.

Nichols filed a complaint against Volunteers that she had suffered a racially hostile work environment, had been discriminated against based on her race, and had suffered retaliation for reporting claims of racial discrimination to her supervisors. Nichols also asserted various claims under Alabama law that are not relevant to this appeal.

Volunteers moved for summary judgment. After Nichols filed a response to that motion, Volunteers filed a motion to strike the evidentiary submissions that Nichols relied on to support her response. The district court denied the motion to strike as moot, and it granted summary judgment in favor of Volunteers.

## II. STANDARD OF REVIEW

"This Court reviews de novo summary judgment rulings and draws all inferences and reviews all evidence in the light most favorable to the non-moving

4

party." Craig v. Floyd County, Ga., 643 F.3d 1306, 1309 (11th Cir. 2011) (internal quotation marks omitted). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)). "If the nonmoving party fails to 'make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552 (1986)).

## III. DISCUSSION

Nichols advances four arguments on appeal, and we address each argument in turn. First, we address whether the district court erred when it determined that Nichols abandoned her claim of a hostile work environment. Second, we discuss whether the district court erred when it granted summary judgment against Nichols's claim of racial discrimination. Third, we address whether the district court erred when it granted summary judgment against Nichols's claim of retaliation. Finally, we address whether Nichols waived any argument that she was constructively discharged by Volunteers.

5

*A. Nichols Did Not Abandon Her Claim of a Hostile Work Environment.*

Nichols argues that the district court erred when it ruled that Nichols abandoned her claim of a hostile work environment. The district court stated that Nichols "offered no response to [the] well-supported arguments [of Volunteers] that summary judgment should be granted on" Nichols's claim. Based on our review of the record, we agree with Nichols that the district court erred.

Title VII protects employees from being required "to work in a discriminatorily hostile or abusive environment." Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc) (internal quotation marks omitted). "A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993)). This Court has explained that a plaintiff who alleges a hostile work environment claim must prove (1) that she belongs to a protected group, (2) that she has been subject to unwelcome harassment, (3) that the harassment must have been based on a

6

protected characteristic of the employee, (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) that the employer is responsible for that environment under either a theory of vicarious or of direct liability. See, e.g., id.

Volunteers argued in the district court that Nichols's claim of a hostile work environment claim failed because "the alleged harassment was not sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive work environment." Volunteers argued that "even if Nichols could establish a hostile environment, Volunteers was not liable because Nichols did not reasonably avail herself of Volunteers' anti-harassment policies." In her response, Nichols argued that "[i]t was a racially hostile work environment at [Volunteers] every day." And Nichols described the evidence that supported her claim.

Nichols presented sufficient evidence to create a genuine issue of material fact about whether the harassment she allegedly suffered at Volunteers was severe or pervasive. For example, during her deposition, Nichols testified that "everyday" at Volunteers she heard Stephenson voice her disapproval of interracial relationships. Nichols testified that she heard Rickard use the word

7

nigger "maybe more than five" times. In her affidavit, Nichols stated that she attended a meeting during which her supervisors "talked about how they disliked and hated black men and how black men went to white women because all black women were nasty, dumb, stupid, and worthless, and that they hated all relationships between black men and white women." Nichols attested that she "personally observed" that Stephenson and Rickard talked "daily about how they hated black men and that if black women were not so 'nasty', 'dumb', 'stupid', and 'worthless', black men would not run to white women the way they do." Nichols stated that "[e]veryday Teresa Stephenson would threaten Sarah Rickard's . . . daughter . . . that if she ever even got close to a 'nigger man', they did not know what they would do." Nichols also asserted that "[w]hen the father of Johnson's baby would come to [Volunteers], Teresa Stephenson, Sarah Rickard, and Amy Johnson would yell at him that he was nothing but a 'nigger'. Teresa Stephenson often would start the whole thing off by calling Amy Johnson a 'nigger lover'." Although we have stated that "[i]t is objectively unreasonable to believe" that an isolated use of racially offensive language can create a hostile work environment, Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1214 (11th Cir. 2008), Nichols presented evidence that she encountered racially hostile behavior and language at Volunteers on a daily basis. The district court erred when it

8

granted summary judgment against Nichols's claim of a hostile work environment.

Volunteers argues that we should disregard Nichols's statements in her affidavit because those statements contradict her deposition testimony. Even though a "court may determine that an affidavit is a sham when it contradicts previous deposition testimony and the party submitting the affidavit does not give any valid explanation for the contradiction," we apply this rule "sparingly because of the harsh effect it may have on a party's case." Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1237 (11th Cir. 2010) (internal quotation marks omitted). The assertion of Volunteers that Nichols's affidavit contradicts her deposition testimony is conclusory. Volunteers has failed to identify any specific contradictions between Nichols's affidavit and her deposition testimony.

Although Volunteers also moved for summary judgment based on the affirmative defense recognized in Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275 (1998), and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998), the district court did not address whether Volunteers was entitled to summary judgment on that alternative ground. On remand, the district court should address whether the affirmative defense recognized in Ellerth and Faragher applies. We will not address this issue in the first instance.

9

## B. Nichols's Claim of Racial Discrimination Fails.

Nichols argues that the district erred when it determined that she failed to establish a prima facie case of racial discrimination. She asserts that she established that the nondiscriminatory reasons produced by Volunteers to explain her demotion were pretextual. We disagree.

Nichols relies on circumstantial evidence to support her claim of racial discrimination so we review that evidence based on the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). Nichols had to prove that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) she was replaced by a person outside her protected class or was treated less favorably than a similarly-situated individual outside her protected class. Maynard v. Board of Regents of Div. Of Univ. Dep't of Ed., 342 F.3d 1281, 1289 (11th Cir. 2003). If a plaintiff establishes a prima facie case of racial discrimination in employment, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse actions. McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. 1824. If the employer articulates a legitimate, nondiscriminatory reason for its actions, "the presumption of discrimination is rebutted, and the burden of production shifts to

the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). The plaintiff must meet the reason proffered head on and rebut it. Id. at 1088. If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to avoid summary judgment. Chapman v. AI Transp., 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc).

Even if we assume that Nichols established a prima facie case of racial discrimination, we conclude that Nichols failed to rebut the nondiscriminatory reasons that Volunteers offered. Volunteers produced evidence that Nichols was demoted for three nondiscriminatory reasons: according to Tucker, he demoted Nichols because she had altered her time sheets, contacted Volunteers staff while on administrative leave, and used a company cell phone for personal calls. The only nondiscriminatory reason that Nichols attempts to rebut on appeal is Tucker's assertion that Nichols had altered her time sheets. Nichols fails to offer any argument or evidence that Tucker's assertions that he demoted her because she had contacted Volunteers staff and had used a company cell phone for personal calls were pretextual. Because Nichols must rebut each of the nondiscriminatory reasons offered by Volunteers to survive summary judgment, she has failed to

establish pretext.  Chapman, 229 F.3d at 1037.

Nichols attempts to circumvent her duty to rebut each of the nondiscriminatory reasons that Volunteers offers by arguing that Stephenson was the relevant decisionmaker, but that argument fails.  Although Nichols presented evidence that Stephenson had the power to demote employees at Volunteers, Nichols did not produce any admissible evidence that Stephenson demoted her.  Nichols asserted that she "den[ies] that . . . Stephenson did not make the decision to demote me and to lower my pay" and that "Stephenson took Nichols' [house manager II] position away from Nichols, gave it to Castle . . . and demoted Nichols."  But these conclusory assertions are unaccompanied by supporting evidence that Stephenson demoted Nichols.  See Holifield v. Reno, 115 F.3d 1555 app. at 1564 n.6 (11th Cir. 1997).   These bald assertions are insufficient to create a genuine issue of material fact that Stephenson was the relevant decisionmaker.  Id.

Judge Barkett's partial dissent argues that "statements in King's declaration are unequivocal that Stephenson planned to get rid of Nichols because she was black" and that "[a] reasonable jury, which credited King's statements and not Tucker's, could infer from King's statements that it was Stephenson who made the decision to demote Nichols because of her racial animus," Barkett, J., concurring

in part and dissenting in part at 19, but that argument is wrong. To be sure, Stephenson's racially offensive statements, as repeated in King's affidavit, are evidence of Stephenson's intention to fire Nichols on the basis of her race in the future. King stated that "Stephenson told [her] that [Stephenson] was going to fire Cassandra Renee Nichols because she is black, has a loud mouth, and she wanted a white person, Melissa Castle, in that position." But the record is undisputed that Nichols was demoted, not fired, and Stephenson's earlier statements that she intended to fire Nichols do not create a genuine issue of material fact that Stephenson later demoted Nichols. In other words, the record contains evidence of Stephenson's earlier intent to fire Nichols on the basis of race, but no evidence that Stephenson later played a role in Nichols's demotion.

Two affidavits provide the only evidence of who actually decided to demote Nichols. In his affidavit, Tucker maintained that Nichols violated Tucker's order not to communicate with King while she was on administrative leave. Tucker "learned that [Nichols] was excessively using her company-issued cell phone for personal use." Tucker discussed this conduct with Cordia Bolden, a human resources officer at Volunteers, and he "decided to demote . . . Nichols." In another affidavit, Bolden confirmed that she and Tucker discussed Nichols's conduct and that Tucker demoted Nichols. Neither Tucker nor Bolden said

anything about Stepheson playing a role in Nichols's demotion. In the light of the undisputed evidence that Tucker demoted Nichols and the absence of any evidence that Stephenson was involved in that decision, Stephenson's earlier statements that she intended to fire Nichols on the basis of race do not create a genuine issue of material fact that Stephenson actually demoted Nichols.

Although Nichols argued in the district court that Stephenson used Tucker as a "cat's paw" to discipline and demote Nichols, she abandoned this argument on appeal. Nichols offers nothing more than passing references to this theory in two footnotes of her briefs. See Old West Annuity and Life Ins. Co. v. Apollo Grp., 605 F.3d 856, 860 n.1 (11th Cir. 2010) ("Although Coast mentions the lack of supporting pleading in a footnote in its appellate brief, Coast has not presented substantive argument on this point on appeal; the issue is therefore waived."); see also United States v. White, 879 F.2d 1509, 1513 (7th Cir. 1989) ("However, by failing to raise this issue other than by a passing reference in a footnote, White has waived it.").

*C. Nichols's Claim of Retaliation Fails.*

Nichols argues that the district court erred when it granted summary judgment against her claim of retaliation. The district court determined that Nichols failed to establish a prima facie case of retaliation because she did not

14

produce any evidence that Tucker, as the relevant decisionmaker, knew that she had engaged in protected activity when he demoted her. The district court also concluded that, even if it assumed that Nichols had established a prima facie case, Nichols failed to rebut the nondiscriminatory reasons Volunteers offered for demoting her.

Title VII prohibits retaliation against an employee "because [she] has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To establish a prima facie case under the retaliation provision of Title VII, Nichols had to prove that "(1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to [Nichols's] protected activities." Little v. United Techs., 103 F.3d 956, 959 (11th Cir. 1997). As with Nichols's claims of discrimination, we employ the burden-shifting analysis of McDonnell Douglas to review Nichols's claim of retaliation. Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181–82 (11th Cir. 2010).

Even if we assume that Nichols established a prima facie case of retaliation, we again conclude that she failed to rebut the nondiscriminatory reasons that

15

Volunteers offered to explain her demotion. Again, Nichols offers no argument or evidence that Tucker's assertions that he demoted her because she contacted Volunteers staff and used a company cell phone for personal calls were pretextual. Because Nichols must rebut each of the nondiscriminatory reasons proffered by Volunteers, Nichols has failed to establish that Tucker's nondiscriminatory reasons were pretextual. Chapman, 229 F.3d at 1037.

*D. Nichols Waived Any Argument that She Was Constructively Discharged.*

Nichols argues that the district court "erred by completely ignoring Nichols's claims that she was constructively discharged," and Volunteers responds that Nichols did not fairly present this issue to the district court. Volunteers contends that Nichols did not allege in her complaint that she had been constructively discharged. Volunteers contends that Nichols "did nothing more than mention the term 'constructive discharge' in her [summary judgment response], without formulating any argument or otherwise providing any supporting facts or authority as to why such a claim would have been valid."

Nichols waived any argument that she was constructively discharged. "An argument not made is waived . . . ." Cont'l Technical Servs., Inc. v. Rockwell Int'l Corp., 927 F.2d 1198, 1199 (11th Cir. 1991). "To prevail on a particular theory of liability, a party must present that argument to the district court." Fils v. City of

16

Aventura, 647 F.3d 1272, 1284 (11th Cir. 2011). "Our adversarial system requires it; district courts cannot concoct or resurrect arguments neither made nor advanced by the parties." Id. Nichols did not allege in her complaint that she had been constructively discharged. And Nichols neither articulated the elements of a constructive discharge in her response to the motion for summary judgment nor explained how any evidence in the record established that she had been constructively discharged.

## IV. CONCLUSION

We affirm the summary judgment against Nichols's claims of racial discrimination and retaliation. We vacate the summary judgment against Nichols's claim of a hostile work environment. We remand for further proceedings consistent with this opinion.

We **AFFIRM** in part, **VACATE** in part, and **REMAND** for further proceedings consistent with this opinion.

BARKETT, Circuit Judge, concurring, in part, and dissenting, in part:

I agree with the majority's conclusions that Nichols did not abandon her hostile work environment claim, that the district court properly granted summary judgment against Nichols on her retaliation claim, and that Nichols waived any argument that she was constructively discharged. However, I believe that Nichols has raised a genuine dispute of a material fact on her race discrimination claim, specifically on the question of whether Volunteers's reasons for demoting her were pretext, and therefore, dissent as to this claim.

Nichols claims that Teresa Stephenson was the real decisionmaker at Volunteers, that Victor Tucker merely rubber-stamped Stephenson's decisions, including the decision to demote her, and that Stephenson was motivated by racial animus toward Nichols. In support of her argument she presented the affidavit of her former supervisor, Sonja King, which includes King's statements that:

> Teresa Stephenson told me that Cassandra Renee Nichols was "black and nasty" and she was going to get rid of "her black ass" so Melissa Castle, who was white, could have her job. . . . Teresa Stephenson told me she needed my help in getting rid of Cassandra Renee Nichols. Teresa Stephenson told me how she was going to maneuver Melissa Castle into Cassandra Renee Nichols' job. I asked Teresa Stephenson why she had to fire Cassandra Renee Nichols. Teresa Stephenson told me that she was going to fire Cassandra Renee Nichols because she is black, has a loud mouth, and she wanted a white person, Melissa Castle, in that position.

18

Given the procedural posture of this case at summary judgment, Nichols's evidence is to be believed and all reasonable inferences must be drawn in her favor. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). Although Tucker's declaration states that he made an independent and unbiased decision to demote Nichols, the statements in King's declaration are unequivocal that Stephenson planned to get rid of Nichols because she was black. A reasonable jury, which credited King's statements and not Tucker's, could infer from King's statements that it was Stephenson who made the decision to demote Nichols because of her racial animus, and therefore, the non-discriminatory reasons attested to by Tucker were merely pretext.

KRAVITCH, J., concurring in part and dissenting in part,

I agree with the majority's decision to affirm the district court's order granting summary judgment in favor of Volunteers on Nichols's claims of racial discrimination and retaliation. I also agree with the majority's conclusion that Nichols waived any argument that she was constructively discharged. But, because I believe that Nichols failed to properly assert a hostile work environment claim, I agree with the district court that Nichols waived this issue as well. Therefore, I respectfully dissent from that portion of the majority's opinion.

"In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (internal quotation marks omitted). Instead, "the onus is on the parties to formulate arguments." *Id.*; *see also Case v. Eslinger*, 555 F.3d 1317, 1328 (11th Cir. 2009) (emphasizing that, because the plaintiff failed to "explain why the defendants were not entitled to" summary judgment, "he 'cannot readily complain about the entry of a summary judgment order that did not consider an argument [he] chose not to develop for the district court at the time of the summary judgment motions'." (quoting *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1264 (11th Cir. 2001) (alteration in original)).

Like the plaintiff in *Case*, Nichols failed to develop her hostile work

20

environment claim at the time of Volunteers's summary judgment motion. In her brief in opposition to summary judgment, Nichols never set out the elements of, or cited any legal authority for, a hostile work environment claim. She never devoted a section or even a paragraph to explaining the specific facts that amounted to a hostile work environment. Instead, she only mentioned hostile work environment in a conclusory manner - by explaining that, for example, she "reported the racially hostile working [sic] at [Volunteers]" - or in her headings, introduction, or conclusion, simply tacked on to enumerations of her discrimination and retaliation claims.

It is clear from her brief that Nichols conflated "hostile work environment" with her discrimination and retaliation claims: Nichols set out the requisite elements for those other two claims, which are distinct from the hostile work environment elements,[1] and developed legal argument for those claims. But she failed entirely "to formulate arguments" about her hostile work environment claim, as our case law requires. *Resolution Trust*, 43 F.3d at 599. At no point did she link facts to law to "explain why [Volunteers was] not entitled" to the

---

[1] *Compare Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (hostile work environment elements) *with McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804 (1973) (discrimination elements) *and Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (retaliation elements).

judgment it sought for the reasons Volunteers explained. Because Nichols was counseled throughout her case and, despite this, provided no legal or direct factual support for a hostile work environment claim, I am compelled to conclude that she did not adequately develop her claim at the summary judgment stage.

Importantly, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust*, 43 F.3d at 599. Requiring the district court to determine how the facts Nichols set out satisfied the elements of a hostile work environment claim, in the absence of any argument from Nichols, would be unduly burdensome and tantamount to obliging the district court to serve as counsel for Nichols, which we cannot do. *Cf. GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (holding that, even in the case of a *pro se* litigant, the district court cannot "serve as *de facto* counsel for a party" or "rewrite an otherwise deficient pleading in order to sustain an action"), *overruled in part on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). Accordingly, I would affirm the portion of the district court's order finding that Nichols abandoned her hostile work environment claim.