[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————

No. 11-15792

————————

D. C. Docket No. 3:08-cv-00856-CLS

SONJA D. KING,

Plaintiff-Appellant,

versus

VOLUNTEERS OF AMERICA, NORTH ALABAMA, INC.,

Defendant-Appellee.

————————

Appeal from the United States District Court
for the Northern District of Alabama

————————

(December 19, 2012)

Before DUBINA, Chief Judge, CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

Sonja D. King ("King"), an African-American female, appeals the district court's order granting summary judgment to Volunteers of America, North Alabama, Inc. ("VOA") on her complaint in which she alleged racial discrimination, 42 U.S.C. §§ 1981, 2000e-2(a)(1); retaliation, 42 U.S.C. § 2000e-3(a); and a hostile work environment, 42 U.S.C. § 2000e-2(a)(1). After reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we reverse the district court's judgment and remand for further proceedings.

I.

A. *Facts*

In 2002, King began working at VOA, a Christian organization that, among other things, operates group homes that serve developmentally-challenged individuals in Florence, Alabama. In April 2005, after her return from deployment to Iraq as a member of the Alabama National Guard, King was promoted to service coordinator, the position she held until her termination on December 4, 2006. King reported to Teresa Stephenson ("Stephenson"), the program director for operations of VOA in Florence. Stephenson reported to Victor Tucker ("Tucker"), the chief executive officer of VOA.

King alleges that during her employment as a service coordinator, Stephenson subjected her and other African-American employees to a near-daily

2

barrage of racial harassment and discrimination, all of which VOA human resources and management ignored.  Among the many comments directed at King and other employees by Stephenson were: "Black people have a nasty attitude; they're nasty; they're ignorant;" "[I'm n]ot going to hire any black dudes here because they are drug dealers and might damage the clients;" "Black clients have poop on their asses all of the time;" "Old black women are good for nothing;" "All black guys are good for is to be in jail and drug dealers;" "White girls who like black guys are 'Nigger lovers;'" and "All black people are good for is cleaning up poop off our client[s'] asses."  [King Aff., R. 43-1 at 11.]  King also heard Stephenson frequently call African-Americans "nigger" and state that "[b]lack men go to white women because black women are nasty, dumb, and ignorant."  [*Id.* at 11–12.]  Other Caucasian employees allegedly made similar remarks to King and other African-American employees.

In addition to the offensive comments, Stephenson allegedly displayed favoritism towards Caucasian employees and clients and neglected to properly train and supervise African-American employees.  Stephenson also forced African-American employees to write reports falsely accusing other African-American employees of misconduct.  On several occasions, Stephenson allegedly directed King to falsely report that other African-American employees were committing

3

major infractions, including one of King's immediate subordinates, Cassandra Nichols ("Nichols"). She further expressed to King her belief that African-Americans are inferior to Caucasians and that she wanted only Caucasians in supervisory positions at VOA.

Teresa "Tidwell" Slatton ("Slatton"), Natasha Fuqua ("Fuqua"), former VOA employees, as well as Nichols, reported the harassment to Tucker and human resources on multiple occasions. While King also asserts she complained to VOA management and human resources repeatedly, the first specific evidence of King's complaints about the hostile environment was in March 2006, when she told Tucker that "blacks were being discriminated against and racially harassed on the job" and said that she heard Stephenson state she was having Slatton fired for complaining about it. [King Depo., R. 43-1 at 24–26.] Tucker told King that he was unable to discuss her complaints in detail at the moment but asked her to email him with a suitable time to discuss it further. He also suggested that if it were more convenient, he could meet her at an Applebee's located approximately halfway between the workplace and King's home. King declined to meet him at Applebee's. She admitted that while she felt uncomfortable meeting Tucker away from the office, she never conveyed her discomfort to Tucker, and she never emailed him or discussed any of her concerns or complaints with him again.

4

Tucker never initiated an investigation into either King's or any other employee's complaints.

On March 29, 2006, after King complained to Tucker, King received her first written reprimand for permitting staff to be present while she disciplined another staff member and for disclosing confidential information about co-workers to other staff members. The reprimand arose after an employee made a complaint to Stephenson, which Stephenson then reported to human resources. King denies the allegations. She says employees admitted that Stephenson forced them to fabricate a complaint against King. King received her second reprimand on July 24, 2006, for making negative comments and releasing information about a former employee in response to an inquiry from a prospective employer. King says she only stated what Stephenson told her to state and that Stephenson gave her permission to release information.

King again complained to VOA in August or September 2006. At this time, King and Nichols met with Robin Bucklin ("Bucklin") and/or Cordia Bolden ("Bolden") in human resources to report harassment and discrimination. She admits that human resources told her to make a statement of her complaint and that she failed to do so. King says she did not file a written complaint because at various times human resources told her to wait to file it, instructed her that it was

5

not necessary, and told her it would not be needed until Tucker was notified of her allegations. Two days after her complaint to human resources, Stephenson warned employees, including King, in a staff meeting that they should not report any complaints if they wanted to keep their jobs, and that if they did complain, she would know about it. On September 10, 2006, Stephenson told another VOA employee, April Chandler ("Chandler"), that "she was going to get Sonja D. King back" for reporting the harassment and discrimination and forced Chandler to write a statement falsely attesting that King engaged in misconduct.[1] [Chandler Aff., R. 82-2 at 3–4.]

Significantly, Stephenson also told King that "Victor Tucker will rubber stamp anything I tell him to" and that "Victor Tucker rubber stamps any decision I make in regard to [VOA] employees" at the Florence office. [King Aff., R. 43-1 at 9.]

King received her final four reprimands on November 16, 2006, approximately six weeks after Stephenson told Chandler she would retaliate against King for King's complaints. One reprimand was for failing to address a complaint about a broken heater in one of the group homes. King says she reported the problem to Stephenson but was told VOA would not replace the heater

---

[1] It is unclear from the record whether Stephenson's comment to Chandler occurred before or after the August or September meeting with Bolden and Bucklin.

6

because the clients were being moved out of the home shortly.  Stephenson issued the reprimand after another employee complained.  Another reprimand was for contacting Nichols while she was on administrative leave pending an investigation of her alleged misconduct.  King does not dispute contacting Nichols but says she only did so at the request of Stephenson.[2]

King was placed on administrative leave the same day she received the reprimands.  Tucker then directed Bolden to investigate the events surrounding the reprimands.  On December 4, 2006, after Bolden concluded the reprimands were properly given, Tucker sent King a letter informing her of her termination.  In the letter, he stated that he made the decision based on her failure to address the defective heating system, her communication with Nichols while Nichols was on administrative leave, her permitting Nichols to correct her own timesheet, and her other prior violations of VOA policy.

B.  *Procedural History*

After receiving her right to sue notice, King filed this lawsuit in the Northern District of Alabama on May 14, 2008.  She alleged three state law claims, as well as federal law claims for racial discrimination, retaliation, and hostile work

---

[2] The other two reprimands issued on November 13, 2006, were for allowing Nichols to correct her own timesheet and for failing to cooperate fully in the investigation of Nichols's alleged misconduct.  Notably, the investigation was inconclusive as to Nichols's conduct, and she was permitted to return to work the same day that King was placed on administrative leave.

7

environment.  In July 2009, VOA moved for summary judgment on all of King's

state law claims and the discrimination and retaliation claims but not the hostile

work environment claim.  In August 2011, the district court granted VOA's

motion.

At the pretrial conference held on August 26, 2011, King argued she should

be permitted to amend her complaint to reflect changes in the law due to the

pronouncements in *Staub v. Proctor Hospital*, __ U.S. __, 131 S. Ct. 1186 (2011)

and *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011).  The district

court granted her request.  King subsequently filed an amended complaint, which

dropped the state law claims and included new allegations related to not only the

discrimination and retaliation claims but also the hostile work environment claim.

VOA again moved for summary judgment, this time on the discrimination,

retaliation, and hostile work environment claims. The district court granted VOA's

motion in its entirety, and King timely appealed.

## II.

This court reviews a grant of summary judgment *de novo*, "viewing the

record and drawing all reasonable inferences in the light most favorable to the non-

moving party."  *HR Acquisition I Corp. v. Twin City Fire Ins. Co.*, 547 F.3d 1309,

1313–14 (11th Cir. 2008) (citation omitted).  Summary judgment is proper "if the

8

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III.

Before addressing the merits of King's claims, we address briefly King's argument that the district court erred in allowing VOA to move for summary judgment on her hostile work environment claim after she amended her complaint. King contends that instead, the court should have permitted VOA to move for summary judgment on only the discrimination and retaliation claims, the claims potentially implicated by the holdings in *Staub* and *Lockheed-Martin*. King is incorrect. Nothing in the district court's order allowing King to amend her complaint and inviting VOA to again move for summary judgment precluded VOA from addressing the hostile work environment claim. This is in accordance with the district court's interpretation of its own order, which is entitled to broad deference. *See Alley v. U.S. Dep't of Health & Hum. Servs.*, 590 F.3d 1195, 1202 (11th Cir. 2009) (stating that a district court's interpretation of its own orders are reviewed for abuse of discretion). King's argument that the district court improperly construed the evidence in violation of *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 120 S. Ct. 2097 (2000), is also without merit.

9

We now turn to the substance of King's claims.  First, we address whether the district court erred when it granted summary judgment against King's claim of racial discrimination.  Second, we address whether the district court erred when it granted summary judgment against King's claim of retaliation.  Finally, we address whether the district court erred when it granted summary judgment against King's claim of hostile work environment.

A.  *Discrimination Claim*

King concedes both that she cannot establish her case through direct evidence and that she cannot establish a prima facie case under the traditional burden-shifting framework of *McDonnell Douglas* because she has no relevant comparator, and there is no evidence that she was replaced by a Caucasian employee.[3]  But, as we have recently explained, "[t]here is more than one way to show discriminatory intent using indirect or circumstantial evidence":

> One way is through the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089 (1981).  Another way is "present[ing] circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  A triable issue of fact exists if the record, viewed in the light most favorable to the plaintiff, presents enough circumstantial evidence to raise a reasonable inference of

---

[3] *See Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997); *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010).

intentional discrimination.  *See id.*  If the plaintiff presents enough circumstantial evidence to raise a reasonable inference of intentional discrimination, her claim will survive summary judgment.  *Id.*

*Hamilton v. Southland Christian Sch., Inc.,* 680 F.3d 1316, 1320 (11th Cir. 2012).

VOA essentially argues that King has failed to produce sufficient evidence of a causal link between her termination and Stephenson's discriminatory animus because she has not produced evidence that Tucker, as the ultimate decision-maker, was Stephenson's "cat's paw."[4]

In *Staub*, the Supreme Court recently stated "that if a supervisor performs an act motivated by . . . animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable."  __ U.S. at __, 131 S. Ct. at 1194 (footnote omitted).  The Court explained:

> Animus and responsibility for the adverse action can both be attributed to the earlier agent (here, Staub's supervisors) if the adverse action is the intended consequence of that agent's discriminatory conduct. So long as the agent intends, for discriminatory reasons, that the adverse action occur, he has the scienter required to be liable under USERRA. And it is axiomatic under tort law that the exercise of judgment by the decisionmaker does not prevent the earlier agent's action (and hence the earlier agent's discriminatory animus) from being the proximate cause of the harm.

---

[4] King also argues that there is sufficient evidence that Stephenson, not Tucker, made the decision to fire her.  However, King has failed to produce any admissible evidence to support her assertion.  She simply states that she *denies* Tucker was the one who fired her and that she *believes* Stephenson fired her.  Such conclusory allegations are not sufficient to survive summary judgment.  *See Holifield,* 115 F.3d at 1564 n.6.

11

*Id.* at __, 131 S. Ct. at 1192.

Notably, the Court also held that an independent investigation by an employer does not necessarily immunize the employer from liability. "[I]f the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action . . ., then the employer will not be liable." *Id.* at __, 131 S. Ct. at 1193. However, "the supervisor's biased report may remain a causal factor if the independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified." *Id.*

We believe the evidence that Tucker was Stephenson's cat's paw is sufficient under *Staub* to survive summary judgment. Stephenson's statement to Chandler that she would engineer King's termination and her statement to King that Tucker rubber-stamps her recommendations present strong circumstantial evidence that she did in fact cause King's termination. Furthermore, King presented evidence that all of the written reprimands were signed by Stephenson and some of them were not signed by anyone else, also possibly indicating Stephenson was the motivating force behind them. Similarly, it is also alarming that several of the reprimands cited in Tucker's letter informing King of her termination occurred only because of some act by Stephenson. That Bolden did

12

some kind of investigation that upheld the validity of the reprimands we conclude is not sufficient to negate the causal link between Stephenson's animus and King's termination; Stephenson engineered at least some of the reprimands that were ultimately the basis for King's termination—the very definition of proximate cause.

Similarly, King has produced sufficient evidence to cast doubt on the veracity of VOA's stated reason for its decision—the reprimands. Again, the fact that Stephenson stated she was going to get King fired for complaining, coupled with her outrageous, daily statements derogating African-American employees, creates a material dispute as to whether the stated reason, and not King's race, was the real reason for the termination.

B. *Retaliation Claim*

We next turn to King's retaliation claim. Title VII prohibits retaliation against an employee "because [she] has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). To establish a prima facie case of retaliation under Title VII, King must show that: (1) she engaged in a statutorily protected activity, (2) she suffered a materially adverse action, and (3) there is a

13

causal connection between the protected activity and adverse action.  *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006).  We then employ the burden-shifting analysis of *McDonnell Douglas* to review King's claim of retaliation.  *See Brown v. Ala. Dep't of Transp.,* 597 F.3d 1160, 1181–82 (11th Cir. 2010).

No one disputes that King's complaints were a statutorily protected activity or that she suffered a materially adverse action when she was put on administrative leave and subsequently fired.  The parties do dispute, however, whether King has produced evidence of a causal link between her complaints and her termination.

She has.  Again, the record indicates that the decision-maker, Stephenson, stated she was engineering King's termination in retaliation for King's reporting the harassment and discrimination.  Just six weeks later, King was placed on administrative leave.  We conclude this evidence is all that is needed to survive summary judgment.

C. *Hostile Work Environment Claim*

In order to prove a claim for racially hostile work environment, a plaintiff must "demonstrate that the actions of the defendant[] altered the condition of the workplace, creating an objectively abusive and hostile atmosphere." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir. 1995).  To establish a hostile

14

work environment claim, King must demonstrate:  (1) she belongs to a protected class, (2) she was subject to unwelcome harassment, (3) the harassment complained of was based on her race, (4) the harassment was sufficiently severe or pervasive to alter the terms or conditions of employment, and (5) a basis for holding VOA responsible.  *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).  The district court did not address the elements of the claim, finding instead that even if King had established those elements, VOA had established the *Faragher/Ellerth* defense and thus was entitled to summary judgment.

To establish the defense, VOA must demonstrate that:  (1) it exercised reasonable care to prevent and correct promptly any harassing behavior, and (2) King unreasonably failed to take advantage of any preventative or corrective opportunities provided by VOA to avoid harm.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275, 2293 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270 (1998).

King has presented evidence creating at least a genuine issue of material fact about whether VOA exercised reasonable care to prevent and promptly correct any harassing behavior.  The record contains evidence that numerous VOA employees complained to Tucker and human resources about the discrimination and

15

harassment multiple times, and at no point did VOA conduct an investigation. From that evidence, a reasonable jury could conclude that VOA did not have an adequate system in place to prevent and correct hostile behavior.

King has also presented evidence creating at least a genuine issue of material fact about whether she acted reasonably with respect to her complaint to human resources in August or September 2006. At this meeting, she told human resources about the harassment. She asked repeatedly if and when she should file a written complaint, and she was told repeatedly that it was unnecessary, that it would be needed at a later time, or that Tucker had not yet been notified, and it was therefore not yet the time to submit a complaint. Based on that evidence, though the formal policy evidently required King to file a written complaint, she behaved reasonably under the circumstances. *See Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1314 (11th Cir. 2001) (stating that in some circumstances, an employee's noncompliance is reasonable and thus, the defendant will not be entitled to the affirmative defense).

## IV.

For the foregoing reasons, we reverse the district court's grant of summary judgment in favor of VOA and remand the case for further proceedings consistent with this opinion.

16

**REVERSED AND REMANDED.**