[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10050

_____

D.C. Docket No. 3:10-cv-02961-AKK


APRIL D. CHANDLER,

                                                          Plaintiff - Appellant,

versus

VOLUNTEERS OF AMERICA,
NORTH ALABAMA, INC.,

                                                          Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(January 27, 2015)

Before WILSON and ROSENBAUM, Circuit Judges, and CONWAY,[*] District
Judge.

_____

[*] Honorable Anne C. Conway, Chief Judge, United States District Court for the Middle District
of Florida, sitting by designation.

PER CURIAM:

April Chandler brought this action against Volunteers of America, North Alabama, Inc. ("VOANA"), her now-former employer, alleging race-based disparate treatment, a racially hostile working environment, and retaliation, in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a) ("Title VII").  The district court granted summary judgment to VOANA on the retaliation and hostile-work-environment claims, and the case proceeded to trial on the disparate-treatment claim, where the jury found that VOANA had not discriminated against Chandler.  Chandler now appeals the district court's orders denying various motions for recusal, granting summary judgment in favor of VOANA on the retaliation and hostile-work-environment claims,[1] and excluding certain testimony at trial on the disparate-treatment claim.

For the reasons that follow, we now affirm the rulings and judgment of the district court.  For simplicity of discussion, we divide our discussion into three parts:  the denial of the recusal orders, the granting of the summary-judgment motion, and the evidentiary rulings regarding trial evidence.

---

[1] In passing footnotes in her briefs on appeal, Chandler also requests a retrial of her disparate-treatment claim if this Court reverses the district court's grant of summary judgment on the retaliation or hostile-work-environment claims.  Arguments "briefed" in such a cursory fashion are waived.  *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1297 n.3 (11th Cir. 2009); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1580 n.6 (11th Cir. 1989).

## I.    RECUSAL

### A.    *Background*

This case was handled first by one district judge, who issued the summary judgment order, and later, by a different district judge, who tried the case.[2]

Both judges weathered a storm of poorly drafted and somewhat offensive filings from the plaintiff.  To take just a single example, when the district court granted summary judgment on Chandler's hostile-work-environment and retaliation claims, counsel waited four months and then moved for reconsideration. When the court denied the motion for reconsideration, counsel filed a second motion for reconsideration. At a pretrial hearing several months later, the district court agreed to allow Chandler to file a supplemental brief on the hostile-work-environment claim.  Although the court gave very specific instructions to counsel about what the brief should contain—particularly in light of the fact that the court had already considered two motions for reconsideration on the same issue, counsel failed to comply with the court's directives.  The district court struck the brief from the record but provided Chandler with yet another opportunity to file a supplemental brief.  Upon reviewing the supplemental brief, the court declined to

---

[2] Chandler asserts that the case was not simply reassigned, but rather that the first judge ultimately recused himself from the case.  After oral argument, Chandler filed a motion for leave to supplement her appendix with documents that allegedly support her view.  We see no need to address the issue, as it does not affect our decision.  Therefore, Appellant's motion is DENIED.

reinstate the hostile-work-environment claim.  So two months later, Chandler filed yet another motion for reconsideration.

In fact, Chandler consistently filed two motions for reconsideration following nearly every adverse court ruling, often months after the orders had been entered.  The briefs in support of these motions and other filings consisted in large part of conclusory contentions followed by citations to large chunks of, if not the entire, record, leaving the court to decrypt Chandler's claims and arguments with no aid from counsel.

Adding to the frustration of dealing with counsel's failure to present a supported, coherent argument, it appears to have been part of counsel's strategy to attempt to provoke the district court into making inappropriate statements. Counsel's filings repeatedly gratuitously took potshots at the court, denigrating it and its decisions and accusing it of treating Chandler unfairly.  For example, counsel made the following comments, among many, many others, in briefs submitted to the district court in this case:

- If imperfection implied negligence, it could be equally suggested that this District Court may have failed in its own professional duties.

- These reversals [in two other cases that the district court had decided] demonstrate that this Court can err. Still counsel will take the high road and refuse to insinuate or suggest that this Court has been anything less than professional in judging counsel's cases. We all do the best we can, yet still make mistakes.  Not

4

every judge can be Learned Hand or John Roberts. Counsel can only hope that this Court—like the blindfolded statute [sic] of Lady Justice—can step back and decide these issues fairly, dispassionately, and free from any weariness or frustration with counsel or the Court of Appeals panels that ruled against it.

- The Court makes an odd, personal proclamation that it is sympathetic to discrimination and retaliation [sic]. . . . Why would the Court feel the need to make such a statement?  Chandler remains unmoved and is still concerned that this Court's actions speak louder than its words.  Almost every major corporate employer who has been found guilty of discrimination or retaliation over the last thirty years has circulated a hypocritical statement in some sort of official document to the extent that it "does not tolerate" discriminatory or retaliatory behavior in its workplace.  If the Court were truly interested in remedying the inexcusably racist conduct at VOANA, it would follow settled federal law, deny the summary judgment motion, and trust a jury to decide whether Chandler was damaged by VOANA's retaliation and/or its racially hostile work environment.

- The Court's decisions often seem capricious or erratic.

- Many of the Court's statements in its Amended Order were misleading or wrong.

Nor did counsel stop with the district court.  He repeated—and intensified—several of these comments about the district court in support of Chandler's appeal before this Court.

5

On occasion, a district judge's frustration with counsel's tactics found its way into an opinion or an in-court remark.  In response, Chandler filed motions for recusal with both judges based on various statements that the court made during the course of the litigation.  Chandler claims that the challenged statements were "part of an impermissible pattern of hostility or frustration against Chandler and her counsel."  The district court denied Chandler's motions for recusal.

## B.    Standard of Review

We review a district court's denial of a motion for recusal for abuse of discretion.  *See Jaffree v. Wallace*, 837 F.2d 1461, 1465 (11th Cir. 1988) (per curiam).

## C.    Discussion

Title 28, United States Code, Section 455(a) requires a district judge to recuse himself "in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a); *see also Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1329 (11th Cir. 2002) (per curiam).  A judge's impartiality might reasonably be questioned if "an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality."  *Thomas*, 293 F.3d at 1329 (internal quotation marks and citation omitted).

Generally, "bias sufficient to disqualify a judge must stem from extrajudicial sources."  *Id.* (internal quotation marks and citation omitted).    When no

extrajudicial source is involved, such as when a bias or partiality motion is based on judicial rulings alone or on "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings," disqualification is required only where the judge "display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994). "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* Further, "expressions of impatience, dissatisfaction, annoyance, and even anger" or "even a stern and short-tempered judge's ordinary efforts at courtroom administration[,]" do not establish bias or partiality sufficient to support disqualification. *Id.* at 555-56, 114 S. Ct. at 1157.

We have reviewed all of the statements that Chandler alleges reveal the judges' personal biases against her or show that the judges' impartiality might reasonably have been questioned and find that none of them show bias or partiality against Chandler, and none of them require recusal. Instead, the challenged remarks arose out of and are based on the district court's interaction with counsel and Chandler in the course of the litigation.

For example, commenting on counsel's practice of block-citing large chunks of the record and failing to explain how those portions of the record in any way

supported the legal points that Chandler sought to make, the district court remarked, "This court has grown weary of attempting to correct and compensate for the deficiency of [counsel]'s briefs"; "[Counsel's] briefs are consistently disorganized *at best*, and confused and confounding at worst"; and "[Counsel's] motion practice transcends the oft-criticized concept of 'shotgun pleading' to what this court will characterize as 'mudball pleading.'"

While we do not necessarily condone comments of this nature, these feelings of frustration are understandable on this record and are not without basis. Indeed, although the court is obligated to carefully review the entire record in reaching a decision, it is counsel's duty in the first instance to marshal the facts and show how they support his legal argument. Counsel did not do this, despite being specifically directed to on more than one occasion.

Nor did the district court's statements about counsel's understanding of the law—such as, "the undersigned believes Plaintiff has a fundamental misunderstanding of the law"—or reprimands of counsel's conduct—such as, "counsel's professionalism and advocacy has been less than exemplary" or "counsel must . . . [try the case] in a manner consistent with the professionalism required of those who have the privilege of representing clients in this honorable profession"—reveal anything more than the judge's frustration with counsel's improper tactics in the litigation. At most, the court's statements showed "[m]ere

friction between the court and counsel," which "is not enough to demonstrate pervasive bias." *Thomas*, 293 F.3d at 1329 (internal quotation marks and citation omitted).

Finally, other remarks of which Chandler complains which were directed at Chandler herself were made in a different trial, outside of the presence of the jury, and, most significantly, after final judgment had already been entered in Chandler's case, for the purpose of controlling Chandler's behavior as a witness in the subsequent trial. The remarks did not indicate that the judge was biased or prejudiced against Chandler, and a judge may "chastis[e] the parties . . . when necessary to control the tenor of the trial." *United States v. Killough*, 848 F.2d 1523, 1529 (11th Cir. 1988). In short, Chandler's motions for recusal were properly denied.

## II.    SUMMARY JUDGMENT

### A.    Background

#### 1.    Facts[3]

Chandler, an African-American female, started working at VOANA in August 2005. VOANA was a Christian human-services organization that provided group home care and instruction for the developmentally challenged. It operated

---

[3] We recite the following facts in the light most favorable to Chandler, since she was the party opposing summary judgment. *See Gillis v. Ga. Dep't of Corr.*, 400 F.3d 883, 884 n.2 (11th Cir. 2005).

9

group homes in and around Florence, Alabama, and it provided in-home care to some non-resident patients through contracts with government agencies, such as the Lauderdale County Department of Human Resources ("DHR") and the Scope 310 Authority of the City of Florence.[4]

Chandler began as a House Manager I ("HM-1"), a position in which she was primarily responsible for providing direct patient care. She was originally assigned to work at group home #16, but in May 2006, at her request, she was reassigned to work as an instructor at the Day Rehabilitation Center ("Day Program"), VOANA's training facility for patients, including some patients who reside at the group homes. Chandler reported to a Service Coordinator, who reported to Teresa Stephenson, the Program Director, who was Caucasian.

On September 11, 2006, Chandler was removed from her teaching job at the Day Program and given a night shift at group home #88, a notoriously dangerous and violent house. Chandler's position at the Day Program was given to Stephenson's Caucasian mother.

On May 29, 2007, Chandler was reassigned to the day shift at group home #88 and promoted to the House Manager II ("HM-2") position, a position in which she was largely responsible for supervising HM-1s. Around this time, Stephenson

---

[4] On December 31, 2010, VOANA merged with, or was acquired by, Volunteers of America, Southeast, Inc. ("VOASE"). VOASE then began to provide services to VOANA's former clients and to operate the group homes in North Alabama.

10

also assigned Chandler to provide behavioral aide services, or direct client care, to African-American clients who were not residents of VOANA's group homes. The non-resident homes were notoriously violent and dangerous, and Caucasian employees refused to go to them. Chandler continued to do direct care assignments until around January 2008.

In the beginning of April 2009, Chandler supervised a Caucasian employee, Diana Vinson, and was told by other employees she supervised that Vinson had mistreated certain residents. Chandler reported the misconduct to her supervisor, Bonnie Davis, a Service Coordinator who was Caucasian. Davis, in turn, reported the misconduct to Stephenson. According to Chandler, no actions were ever taken in response to the complaint. A few weeks later, on April 23, 2009, Chandler was placed on administrative leave based on an allegation of abuse. Davis told three of Chandler's subordinates about the administrative leave, which was confidential information shared in violation of VOANA's company policy. Davis also told one of Chandler's subordinates to disregard Chandler's instructions. VOANA's investigation revealed that the allegations of abuse against Chandler were unfounded, and she returned to work on May 4, 2009. No employee ever actually disregarded Chandler's instructions.

11

*2.    Procedural History*

Chandler believed she was being racially discriminated against at VOANA. In May 2009, Chandler filed a charge of discrimination with the EEOC. She received a right-to-sue notification in August 2010 and filed the complaint in this case in November 2010. In the complaint, Chandler alleged that VOANA had racially discriminated against her and retaliated against her for engaging in protected activity by (1) wrongfully placing her on unpaid administrative leave in April 2009, (2) subjecting her to harassment and unfair discipline, (3) undermining her authority as a supervisor in July 2009, (4) giving her unfair job assignments, (5) refusing to address the racially hostile work environment to which she was subjected, and (6) taking her position away from her and giving it to a Caucasian employee. The allegations break down into claims for race-based disparate treatment, retaliation, and a racially hostile work environment.

VOANA moved for summary judgment on all of Chandler's claims. The district court granted summary judgment on the retaliation and hostile-work-environment claims. It also found Chandler's claim about having her position taken away from her and given to a Caucasian employee untimely under both Title VII and § 1981. But the court allowed Chandler to proceed to trial on several aspects of her disparate-treatment claim: (1) being forced to accept direct care assignments that had been refused by Caucasian employees, (2) being placed on

12

administrative leave in April 2009, and (3) having confidential information shared about her administrative leave.  At the close of trial, the jury returned a verdict unanimously finding that VOANA had not discriminated against Chandler on the basis of her race.[5]

## B.    Standard of Review

We review *de novo* an order granting summary judgment, drawing all inferences and reviewing all evidence in the light most favorable to the nonmoving party. *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248 (11th Cir. 2014).  In our review, we "examine *only* the evidence which was before the district court when [it] decided the motion for summary judgment."  *Chapman v. AI Transp.*, 229 F.3d 1012, 1026 (11th Cir. 2000) (internal quotation marks and citation omitted) (emphasis in original).  We may affirm the district court on any ground fairly supported by the record, *Rozar v. Mullis*, 85 F.3d 556, 564 (11th Cir. 1996), even on a ground the district court did not consider, *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 973 (11th Cir. 2008).

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

---

[5] The jury answered special interrogatories and found that (1) VOANA had forced Chandler to accept direct care assignments that had been refused by Caucasian employees, but Chandler's race was not a motivating factor that prompted VOANA to take that action, (2) VOANA had placed Chandler on administrative leave, but Chandler's race was not a motivating factor that prompted VOANA to take that action, and (3) VOANA had shared confidential information about Chandler, but Chandler's race was not a motivating factor that prompted VOANA to take that action.

13

Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of informing the district court of the basis for the motion and identifying the parts of the record it believes demonstrate the absence of a genuine issue of material fact. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)). However, "[t]he burden then shifts to the nonmoving party to rebut that showing . . . ."  *Id.* (internal quotation marks and citation omitted).  "The nonmoving party does not satisfy its burden if the rebuttal evidence is merely colorable, or is not significantly probative of a disputed fact."  *Id.* (internal quotation marks and citation omitted).  A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* (internal quotation marks and citation omitted).

## C.    *Discussion*

Much like her briefs in the district court, Chandler's briefs on appeal make little to no argument on the merits of her claims for retaliation and hostile work environment and, instead, refer us to a large chunk of the district-court record and complain about the quality of VOANA's summary-judgment briefs.  Indeed, counsel still seems to be under the misimpression that it is the court's job, not counsel's, initially to comb through the record, identify the facts supporting the

14

plaintiff's legal position, and apply them to the law—all without any guidance from counsel. Counsel states, "Chandler would be at a great disadvantage if she were forced to argue the full summary judgment record to the Court of Appeals without the benefit of the District Court first bracketing and pinpointing the most important or essential fact issues."

And, to the extent that Chandler purports to make any argument at all on the merits in her appellate brief, it consists entirely of the following: "Instead of offering yet another iteration and rewording of her argument that a jury should have heard her retaliation and hostile-work-environment claims, Chandler just cites to the advocacy and opposition that she presented, repeatedly and in depth, to the District Court." Counsel then cites seven documents in their entirety that were filed in the district court.

We have "rejected the practice of incorporating by reference arguments made to district courts" and held that a party waives all arguments it presents in this manner. *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1167 n.4 (11th Cir. 2004). Chandler may not "both bypass the rules governing space limitations and transfer [her] duty to make arguments to the judges of this panel." *Id.* Because she has failed to properly present for review any argument regarding the merits of her retaliation and hostile-work-environment claims, she has waived her challenge to the viability of the claims.

15

But even if she had not waived her challenge, the claims would still fail. We briefly explain why below.

However, before addressing why Chandler's claims fail on the merits, we note that in this discussion of Chandler's retaliation and hostile-work-environment claims, we consider only those arguments that Chandler made and evidence that she presented in her initial opposition to VOANA's motion for summary judgment and in an amended supplemental briefing on the hostile-work-environment issue that the district court permitted her to file.

We take a moment to explain why we do not consider any arguments that Chandler made in any of her motions for reconsideration of the district court's ruling on her hostile-work-environment and retaliation claims and in her original supplemental brief that the court struck for failure to comply with the court's instructions—four of the seven filings to which Chandler refers us. As previously noted, two of the filings are motions for reconsideration of the district court's summary-judgment order, the first of which Chandler filed four months after the court entered the order, pursuant to Fed. R. Civ. P. 60(b). The district court denied the motion. The district court similarly denied Chandler's second motion for reconsideration, brought pursuant to Rules 60(b) and 59(e). We review the denial of these motions under an abuse-of-discretion standard. *See Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1341 (11th Cir. 2007); *Region 8 Forest*

16

*Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 805-06 (11th Cir. 1993); *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984). The district court did not abuse its discretion in denying either of the motions for reconsideration, as Chandler submitted no new evidence, nor did she make any arguments that she could not have made in her initial opposition, nor did she provide any reason to justify relief from the judgment. *See Griffin*, 722 F.2d at 680; *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1238-39 (11th Cir. 2012) (per curiam).

Later in the proceedings, the court decided to reconsider Chandler's hostile-work-environment claim and gave her the opportunity to file a supplemental briefing on the issue, with specific instructions to "match[] facts to elements of law that are required to allege a viable racially hostile work environment claim that survives a motion for summary judgment." Chandler filed a supplemental briefing but failed to comply with the court's directives. The district court thus struck the supplemental briefing, but it gave Chandler an opportunity to submit an amended supplemental briefing. Chandler's amended supplemental briefing still failed to comply with the court's directives. Nonetheless, the district court reviewed both of Chandler's supplemental briefings on the hostile-work-environment issue and found that reinstating the hostile-work-environment claim was not warranted.

17

Approximately two months later, Chandler filed yet another motion for reconsideration, pursuant to Rule 60(b), of her hostile-work-environment claim. She also filed a motion for reconsideration, pursuant to Rule 60(b), of her retaliation claims. With the briefings on these motions, Chandler filed a new affidavit. The court denied Chandler's motions. It did not abuse its discretion in doing so, as Chandler made no argument and submitted no evidence that she could not have submitted in her initial briefing in opposition to summary judgment.

Because we find that the district court did not abuse its discretion in denying Chandler's various motions for reconsideration, we will not consider any arguments that she made or evidence that she presented in those filings. Similarly, we will not consider any arguments that Chandler made or evidence that she presented in her first supplemental briefing on the hostile-work-environment issue because the district court struck it from the record.[6]

1.    *Retaliation Claims*

Chandler claims that VOANA retaliated against her for various statutorily protected activity by (i) reassigning her from her teaching job at the Day Program to a night shift at group home #88, (ii) requiring her to provide direct care services,

---

[6] Similarly to her motions practice in the district court, and in addition to the motion for leave to supplement her appendix discussed above, *see supra* note 2, Chandler filed four additional motions with this Court in the month following oral argument—two additional motions for leave to supplement her appendix and two motions to supplement her motions for leave to supplement. As the material Chandler wishes to submit is of little to no relevance to her reviewable claims on appeal and would not affect our decision, her motions are DENIED.

18

(iii) putting her on administrative leave, and (iv) undermining her authority as a supervisor.[7]

The first of these allegations is barred by Title VII's administrative-exhaustion requirement and § 1981's statute of limitations. Title VII requires a plaintiff to exhaust administrative remedies by filing a timely charge of discrimination with the EEOC before pursuing a discrimination claim. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). To be timely, the charge must be filed within a prescribed time period, generally either 180 or 300 days after the alleged unlawful employment practice occurred, depending on the state. 42 U.S.C. § 2000e-5(e)(1). Though a plaintiff is not required to exhaust administrative remedies before filing a § 1981 action, a § 1981 action must be filed within the four-year statute of limitations prescribed by 28 U.S.C. § 1658. *See Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1338-39 (11th Cir. 2008).

Here, Chandler was reassigned from her teaching job at the Day Program to work a night shift at group home #88 on September 11, 2006. But she did not file

---

[7] Chandler also alleges that, around the beginning of April 2011, Defendant retaliated against her for filing this lawsuit by changing its van-use policy as applied to her and communicating with her only in writing, often via sticky note. Chandler discussed these claims for retaliation in her deposition and raised them in her brief in opposition to summary judgment, but she never amended her complaint to add the claims. We will therefore not consider them. *See Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir. 2006) (holding that the district court correctly refused to address an allegation of retaliation that the plaintiff discussed in his deposition because he never amended his complaint to include the claim); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

a charge with the EEOC until May 5, 2009—far too long after the reassignment to exhaust administrative remedies for that claim under Title VII. And she did not file the complaint in this case until November 2, 2010, more than four years after the reassignment, when the statute of limitations for the claim under § 1981 had run. So Chandler's retaliation claim relating to her reassignment was barred by her failure to timely exhaust administrative remedies under Title VII and her untimely filing of the § 1981 action.

The other retaliation claims, while actionable, all lack merit. Title VII prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Section 1981 similarly prohibits retaliation, *see CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 446, 128 S. Ct. 1951, 1954-55 (2008), and the framework for deciding retaliation claims under Title VII also governs retaliation claims under § 1981. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 978 (11th Cir. 2008); *see also Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 n.14 (11th Cir. 2011) ("Title VII and § 1981 have the same requirements of proof and utilize the same analytical framework."). To establish a prima facie case of retaliation, a plaintiff must "show[] that: (1) she engaged in statutorily protected activity; (2) she suffered a

20

materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012) (internal quotation marks and citation omitted).

Chandler did not satisfy the third prong of the test with respect to her direct-care assignments because she failed to show how the assignments were connected with any particular statutorily protected activity in which she engaged. The record indicates that Chandler was assigned to provide direct care from around the end of May 2007 until January 2008. But Chandler did not present any evidence that she engaged in an activity opposing racial discrimination shortly before or during this time.

"We construe the causal link element broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Id.* at 1260 (internal quotation marks and citation omitted). However, "merely showing that the alleged adverse action occurred sometime after the protected expression does not establish the causation element." *Davis*, 516 F.3d at 978 n.52.

Chandler allegedly complained to her supervisor at the Day Program about racial discrimination in May 2006 and allegedly refused to sign false statements about her African-American supervisor, Sonja King, at Stephenson's request in

September 2006. But both of these incidents occurred well before May 2007 when she was required to do direct-care assignments. All other conduct we could possibly consider occurred in 2009, well after her direct-care assignments stopped: Chandler reported Vinson for abuse in or around April 2009, Chandler complained of racial discrimination to Kim O'Neal, a VOANA Human Resources Representative, in a meeting following her administrative leave in or around May 2009, and Chandler spoke to Allen Robinson, VOANA's Senior Human Resources Representative, about racial discrimination pertaining to her Caucasian supervisor, Nicole Jones, in or around June 2010. Because all of these events occurred after the direct-care assignments were made, by definition, the assignments cannot be considered acts of retaliation.[8]

Chandler similarly failed to show a causal connection between her engagement in a statutorily protected activity and her administrative leave. Again, Chandler's May 2006 complaints of racial discrimination are too remote to have any relation to her placement on administrative leave in April 2009. Chandler's reporting of Vinson for abusing a client, while admirable, is not statutorily protected under Title VII because, in reporting Vinson, Chandler was not opposing

---

[8] Chandler also asserts that she complained about or expressed dissatisfaction with racial discrimination at VOANA to Cordia Bolden, a VOANA Human Resources Representative, "on numerous occasions." But nothing in the record reveals when Chandler made these complaints, although it is her burden to establish a causal nexus. Because Chandler has failed to submit any evidence showing that these complaints to Bolden occurred around or near the time of the allegedly retaliatory conduct, Chandler has not satisfied her burden to establish a causal link between these complaints and any of the adverse actions of which she complains.

22

any racial discrimination; she was simply reporting a subordinate's misconduct. And any other conduct that can be considered statutorily protected, such as Chandler's complaints about racial discrimination to O'Neal and Robinson, occurred after Chandler returned from administrative leave.  Thus, Chandler failed to establish a prima facie case of retaliation with respect to her administrative leave.

Finally, for the same reasons, Chandler did not present evidence sufficient to show a causal connection between any statutorily protected activity and the alleged undermining of her authority, even assuming that such an action qualifies as materially adverse.  *Gate Gourmet, Inc.*, 683 F.3d at 1259 (internal quotation marks and citation omitted) ("An action is materially adverse if it might have dissuaded a reasonable worker from making or supporting a charge of discrimination.").  Thus, Chandler failed to present evidence sufficient to establish a prima facie case of retaliation, and all of Chandler's retaliation claims were properly dismissed.

*2.     Hostile-work-environment Claim*

To establish a hostile-work-environment claim under both Title VII and § 1981, *see Jones*, 683 F.3d at 1292, Chandler was required to "prove that the workplace [wa]s permeated with discriminatory intimidation, ridicule, and insult, that [wa]s sufficiently severe or pervasive to alter the conditions of [her]

23

employment and create an abusive working environment." *Adams*, 754 F.3d at 1248 (internal quotation marks omitted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993)). Because the claim was race-based, Chandler had to show that (1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her race; (4) the "harassment was severe or pervasive enough to alter the terms and conditions of [her] employment and create a discriminatorily abusive working environment"; and (5) VOANA was responsible for the environment under a theory of either vicarious or direct liability. *Id.* at 1248-49. The parties do not dispute that Chandler belongs to a protected group. They also do not appear to dispute that VOANA was responsible for Chandler's work environment. Thus, we must determine whether Chandler has presented sufficient evidence of the other three elements.

The determination of whether any racial harassment Chandler suffered was severe or pervasive enough to establish the existence of a hostile work environment—the fourth element—"includes both subjective and objective components," but in reviewing summary judgment, we accept that Chandler "subjectively perceived that the harassment rose to this level." *Jones*, 683 F.3d at 1299. Thus, we evaluate the objective severity of the harassment and "consider, among other factors: (1) the frequency of the conduct; (2) the severity of the

24

conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). "[W]e ask whether, under the totality of the circumstances, a reasonable person would find the harassing conduct severe or pervasive to alter the terms or conditions of the plaintiff's employment." *Adams*, 754 F.3d at 1251.

We have reviewed all evidence that Chandler asserts supports her claims of hostile work environment. Some of the conduct of which Chandler complains hardly constitutes harassment. Other conduct is undoubtedly offensive, but Chandler has not presented sufficient evidence that it was severe or pervasive. For example, no evidence was presented that any racially derogatory comments were directed at Chandler herself. *See Adams*, 754 F.3d at 1254-57 (finding harassment less severe when not directed at the plaintiff). And, while this fact in and of itself does not render such comments irrelevant, Chandler provides no context for the majority of the statements to which she refers; we don't know when or where they were made, and we don't even know whether Chandler herself heard them firsthand or whether someone told her about them at a later point. It is inappropriate for a court to rely on evidence of alleged incidents that are purely speculative or statements where there is "insufficient information as to when the

statements were made, how knowledge of them was acquired, and when [the plaintiff] was informed of them (if she was)." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1522 (11th Cir. 1995).

Chandler argues that our decisions in *King v. Volunteers of America, North Alabama, Inc.*, 502 F. App'x 823 (11th Cir. 2012) (per curiam), and *Nichols v. Volunteers of America, North Alabama, Inc.*, 470 F. App'x 757 (11th Cir. 2012) (per curiam), control the outcome of this case. Chandler's reliance on these cases is misplaced. In *King*, we did not consider whether the plaintiff had met her burden to establish the existence of a hostile work environment because the district court had not addressed that issue. *King*, 502 F. App'x at 829-30. And *Nichols* similarly provides no legal basis or argument for vacating the district court's grant of summary judgment here.

In sum, we find that the evidence that Chandler presented was insufficient to support a racially hostile-work-environment claim, and the district court properly granted summary judgment to VOANA on the claim.

## III.   EVIDENTIARY ISSUE

### A.    *Background Facts*

Opposing counsel in the present case conducted interviews with VOASE (and former VOANA) employees in May 2011 to investigate Chandler's claims of racial discrimination in the present case. Chandler contends that, in the interviews,

26

opposing counsel furthered VOANA's practice of routinely harassing, intimidating, and discriminating against African-American employees when she allegedly harassed, intimidated, or discriminated against two African-American VOANA employees—Armstead and Fuqua—who allegedly refused to provide false testimony for the case.  Chandler wished to call opposing counsel, as well as Armstead and Fuqua, at the trial on her disparate-treatment claims to show "pattern or practice" and prove that VOANA acted against Chandler with discriminatory intent and treated Chandler differently because of her race.  At a pretrial hearing and in several pretrial orders, however, the district court precluded Chandler from calling opposing counsel as a witness and from asking any other witnesses about any purported threats opposing counsel made during the litigation.  Chandler argues this ruling was an abuse of the court's discretion.  We disagree.

### B.     *Standard of Review*

We review a district court's evidentiary rulings for abuse of discretion. *Adams*, 754 F.3d at 1248.  "An abuse of discretion occurs where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact."  *Id.* (internal quotation marks and citation omitted).  "We overturn evidentiary rulings only when the moving party has proved a substantial prejudicial effect."  *Id.* (internal quotation marks and citation omitted).

## C.    Discussion

The district court properly excluded the evidence as irrelevant.  "Irrelevant evidence is not admissible[,]" Fed. R. Evid. 402, and "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action," Fed. R. Evid. 401.  "A plaintiff establishes a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004).

Here, to prove disparate treatment, Chandler had to show at trial that she was assigned to provide behavioral-aide services, placed on administrative leave, and had her confidential information revealed because she was African-American, in contrast to similarly situated Caucasian employees at VOANA.  Testimony that opposing counsel for VOANA harassed, intimidated, or discriminated against African-American employees over the course of the present litigation has nothing to do with whether Chandler herself was treated differently during her employment at VOANA in relation to the claims at issue.  Nor did Chandler bring a pattern-or-practice claim, so no such claim was at issue.  *Cf. Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1283 (11th Cir. 2008) (finding evidence relating to a pattern or

28

practice of discrimination admissible because it was relevant to the plaintiff's pattern-or-practice claim).  The district court did not commit any error in excluding the evidence, so it did not abuse its discretion.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Chandler's motions for recusal, the district court's grant of summary judgment to VOANA on Chandler's retaliation and hostile-work-environment claims, and the district court's exclusion of irrelevant evidence at trial on Chandler's disparate-treatment claims.

**AFFIRMED**.